# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AIMEE MARIE BENTSON, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  4:15-CV-00523-ALM- |
| | § | CAN |
| v. | § | |
| | § | |
| DAVID E. CHYMA, INDIVIDUALLY, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Plaintiff Aimee Marie Bentson's ("Plaintiff") Motion for Motion for Summary Judgment [Dkt. 40] seeking summary judgment as to Defendant David E. Chyma's ("Defendant") liability under the Federal Debt Collection Practices Act ("FDPCA") and Texas Debt Collection Act ("TDCA"). After reviewing the Motion for Summary [Dkt. 40] and all other relevant pleadings and evidence, the Court recommends that Plaintiff's Motion for Summary Judgment [Dkt. 40] be **GRANTED IN PART AND DENIED IN PART**.

## RELEVANT PROCEDURAL HISTORY

On July 31, 2015, Plaintiff filed the present suit, alleging Defendant and others[1] violated the FDCPA and the TDCA in attempting to collect a debt incurred as a result of a divorce proceeding [Dkt. 1]. Plaintiff asserts Defendant sent her confusing letters in violation of the FDCPA and TDCA and that Defendant consistently contacted her in a harassing, threatening, and demeaning manner [Dkt. 1].

---

[1] Plaintiff filed a voluntary dismissal of Aitken Law Firm, P.C. and Aitken, Aitken & Sharpe, P.C. on October 14, 2015 (Dkt. #8). The Court accordingly dismissed those defendants on October 20, 2015 (Dkt. #11). As such, Defendant David E. Chyma is the sole defendant in this case.

On August 31, 2015, Defendant filed a Motion to Dismiss asserting in whole that "Defendant finds [Plaintiff's] Complaint . . . essentially inaccurate, over-reaching and frivolous. As such, Defendant hereby requests this case be dismissed" [Dkt. 6]. The undersigned recommended denying Defendant's conclusory Motion to Dismiss on November 25, 2015 [Dkt. 13].[2] Defendant thereafter filed a Notice of Pleading and Statement on January 7, 2016; Defendant alleges this Notice of Pleading and Statement documents the entirety of his interactions with Plaintiff [*see* Dkt. 19]. The Notice of Pleading and Statement includes a letter dated January 29, 2015, which has enclosed the Attorney-Client Fee Agreement (between Plaintiff and Aitken Law Firm, P.C.), an invoice numbered 3144 with a $10,940.58 "balance due" tabulating various charges against Plaintiff by Aitken, Aitken & Sharpe, P.C., and a "Statement" dated November 1, 2014, indicating a $15,050.05 "amount due[,]" which encompasses or includes the balance on the invoice numbered 3144 [Dkt. 19, Ex. A]. The District Court construed Defendant's Notice of Pleading and Statement [Dkt. 19] as an objection to the undersigned's report and recommendation and, after considering the construed objection, adopted the undersigned's report and recommendation as the findings and conclusions of the Court on Defendant's Motion to Dismiss [Dkt. 21].

Subsequently, on March 21, 2016, Plaintiff filed a Motion for Judgment on the Pleadings, seeking judgment as a matter of law against Defendant on each of her claims, as well as damages [Dkt. 20]. Defendant filed no response, and on August 18, 2016, the undersigned entered a recommendation that Plaintiff's Motion for Judgment on the Pleadings be granted [Dkt. 24]. On September 7, 2016, Defendant timely filed objections to the undersigned's report and

---

[2] Thereafter, Defendant failed to appear at the management conference or to make his initial disclosures, and again failed to do so after the undersigned ordered as much by way of Show Cause Order, despite that Defendant acknowledged receipt of the order [Dkts. 16-17].

recommendation [Dkt. 26].  After reviewing Defendant's objections, the undersigned converted Plaintiff's Motion for Judgment on the Pleadings into a motion for summary judgment and provided additional time for the Parties to supplement their briefing and to provide evidence [Dkt. 29].  Plaintiff timely filed her Motion for Summary Judgment on November 28, 2016 [Dkt. 32], relying almost wholly on her unverified complaint to carry her summary judgment burden.  Defendant failed to respond and filed no additional evidence.  Largely as a result of the total lack of competent summary judgment evidence, the undersigned entered an amended report and recommendation on February 24, 2017, recommending that Plaintiff's Motion for Summary Judgment [Dkt. 32] be denied (and that Plaintiff's related Motion to Strike [Dkt. 28] be denied as moot).  Plaintiff objected [Dkt. 30], but the District Court adopted the undersigned's ultimate conclusion that the Motion for Summary Judgment [Dkt. 32] should be denied on the record then before the Court [Dkt. 37].

Thereafter, on March 30, 2017, the Court entered the Amended Scheduling Order, reinvigorating the dispositive motion deadline and providing the Parties until May 5, 2017, to file any additional dispositive motions in this matter.  Plaintiff filed the pending Motion for Summary Judgment [Dkt. 40] on May 5, 2017, renewing her request for judgment as a matter of law on the same claims for which she earlier sought and was denied summary judgment, as well as attorneys fees, damages, and injunctive relief [Dkt. 40 at 9].  Critically, Plaintiff provides additional evidence with the pending Motion for Summary Judgment [Dkt. 40] that the Court did not have before it when ruling on Plaintiff's earlier Motion for Summary Judgment [Dkt. 32], namely the affidavit of Plaintiff Aimee Marie Bentson [Dkt. 40, Ex. B] ("Bentson Affidavit") and the affidavit of Plaintiff's counsel Steven M. Strong [Dkt. 40, Ex. C] ("Strong Affidavit").  Defendant filed his Response  on  May 22, 2017,  arguing  the  Court's  March 29, 2017  Memorandum  [Dkt. 37]

"correctly concluded all the allegations filed in this case [by Plaintiff] to be meritoriously deficient" and that Plaintiff "continues to pursue Summary Judgement [sic] even though there is no basis for such" [Dkt. 44].  Defendant proffers no evidence or additional argument in support of his position that "this case should be dismissed" [Dkt. 44].  The Motion for Summary Judgment [Dkt. 40] alongside the newly filed evidence is ripe for the court's consideration.  *See Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d 389 (5th Cir. 1991) (affirming district court's granting of a party's second request for summary judgment where district court previously denied summary judgment on the same claims but party renewed request for summary judgment following introduction of evidence not previously before the court).

## LEGAL STANDARD

### I.   *Summary Judgment Motion*

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which facts are material.  *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 247.  If the movant

bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc*., 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. In so doing, the nonmovant "cannot rely on the facts in its unverified complaint," it must instead "point to evidence in the record sufficient to establish the alleged facts[.]" *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991). Furthermore, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quotations omitted). Nevertheless, the Court "may consider other materials in the record[,]" FED. R. CIV. P. 56(c)(3), and doing so is particularly appropriate where the opposing party proceeds *pro se*. *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)).

## II.    *Summary Judgment Evidence*

Federal Rule of Civil Procedure 56 provides that "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion" through "particular parts of materials in the record" or by "showing that the materials . . . do not establish the . . . presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c).  Briefing does not suffice as factual support: instead, "the court must consider the issues presented by other material offered by the parties . . . to determine whether the Rule 56 request should be granted."  *Marsh v. Austin-Fort Worth Coca-Cola Bottling Co.*, 744 F.2d 1077, 1079 n.4 (5th Cir. 1984) (per curiam); *see also Godeaux v. Dynamic Indus., Inc.*, 864 F. Supp. 614, 619 n.10 (E.D. Tex. 1994) ("The court should not . . . rely upon factual assertions made in the briefs because 'documents of this character are self-serving and are not probative evidence of the existence or nonexistence of any factual issues.'").  The Fifth Circuit has made clear the movant bears the burden of showing through evidence its entitlement to judgment as a matter of law:

> In the usual case, the party who seeks a summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion. He must establish thereby the existence or nonexistence of enough of the essential elements of a claim and its related defenses to permit disposition of the claim as a matter of law. Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  As a result, a court should deny summary judgment where the party seeking such result fails to show either that no genuine issue of material fact exists as to the claims subject of the motion or that the nonmovant cannot show a genuine issue of material fact exists.  *See, e.g.*, *Allergan Sales, LLC v. Sandoz, Inc.*, 211 F. Supp. 3d 907, 914 (E.D. Tex. 2016) ("The moving party has the burden to identify the basis for granting summary judgment and to supply evidence demonstrating the absence of a genuine dispute of material fact."); *Guajardo v. GC Servs., LP*, No. CIV. A. H-08-119, 2009 WL 3715603, at *2 (S.D. Tex. Nov. 3, 2009) ("A plaintiff moving for summary judgment must satisfy its burden by submitting proof that establishes all elements of its cause of action as a matter of law."); *see also Cuba v. Pylant*, 814 F.3d 701, 720 (5th Cir. 2016) ("Rule 56 permits summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.'"); *Zhang v. Monroe*, No. 6:13-CV-811, 2017 WL 108311, at *2 (E.D. Tex. Jan. 11, 2017) (citing *Celotex*, 477 U.S. at 323, and noting the movant bears the initial burden of "identifying those portions of the record [that] demonstrate the absence of genuine issue of material fact"); FED. R. CIV. P. 56(c), (e); *cf. Howard v. AMH ROMAN TWO TX, LLC*, No. 4:15-CV-526, 2016 WL 3392417, at *5 (E.D. Tex. May 11, 2016) (determining under Rule 56 that certain claims failed as a matter of law because plaintiff "failed to offer any summary judgment evidence to demonstrate a genuine issue of material fact regarding them").

When determining whether to grant or deny summary judgment within this framework, the Federal Rules of Evidence govern a court's consideration of the record evidence. *Harrison v. Formosa Plastics Corp. Tex.*, 776 F. Supp. 2d 433, 441 (S.D. Tex. 2011). Generally, this means "[a] court may consider any evidence in the record, 'including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" *Kirkpatrick v. Dover & Fox, P.C.*, No. 4:13-cv-0123, 2013 WL 5723077, at *1 (quoting FED. R. CIV. P. 56(c)(1)(A) in a case presenting FDCPA and TDCA claims). Relevant here, Federal Rule of Evidence 201 permits judicial notice of an "adjudicative fact" where the fact is not subject to reasonable dispute; however, a court generally may not take notice of pleadings for the truth of the matter asserted therein. *See, e.g.*, *SB Int'l, Inc. v. Jindal*, No. 3:06–CV–1174–G, 2007 WL 1411042, at *1 (N.D. Tex. May 14, 2007) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998)); *In re B.R.*, 456 S.W.3d 612, 617 n.4 (Tex. App.—San Antonio 2015, no pet.) (determining allegations could not serve as evidence if the matters alleged). Attaching pleadings to the motion for summary judgment as "evidence" does not change this result—"[t]he basic mission of the summary judgment procedure is to allow the court to pierce the pleadings and assess the proof in order to see whether there is a

genuine need for a trial." *Gauck v. Meleski*, 346 F.2d 433, 436 (5th Cir. 1965); *see Allergan*, 211 F. Supp. 3d at 914 (citing *Celotex*, 477 U.S. at 323).[3]

### SUMMARY OF PLANTINTIFF'S CLAIMS

Plaintiff alleges Defendant (1) violated FDCPA sections 1692d, 1692e, 1692f, and 1692g (2) violated TDCA sections 392.101, 392.301, 392.303, and 392.304; and (3) violated Texas Business and Commerce Code section 17.62 vis-à-vis his violation of TDCA section 392.404(a) [Dkt. 1 at 10-14].   Plaintiff argues the Court should find Defendant committed each of these violations and accordingly is liable [Dkt. 40].  Plaintiff also asserts she should receive "actual and statutory damages proximately caused by Defendant['s] . . . violation[s] of both the FDCPA and [TDCA]" as well as reasonable and necessary attorneys fees (and costs) [Dkt. 40 at 6].

### SUMMARY OF EVIDENCE

Plaintiff proffers the following documents in support of her Motion for Summary Judgment: (1) Plaintiff's Complaint [Dkt. 1]; (2) letters from Defendant to Plaintiff dated January 29, 2015, March 13, 2015, April 9, 2015, and July 2, 2015, respectively [Dkt. 40, Ex. A]; (3) a letter from Plaintiff to Defendant dated March 26, 2015 [Dkt. 40, Ex. B-1]; (4) the Bentson Affidavit [Dkt. 40, Ex. B]; and (5) the Strong Affidavit [Dkt. 40, Ex. C].  Defendant proffers no evidence with his Response and also points to no evidence in the record to support his Response.[4]

On the instant Motion, Plaintiff again attempts to rely (in part) on her unverified complaint to support her request for judgment as a matter of law.  As the authorities cited *supra* clearly

---

[3] Further, as a general matter, a litigant does not "admit" to allegations in a complaint by failing to respond to that complaint.  *Cf. Davenport v. Nissan N. Am., Inc.*, No. 3:14-CV-00671-CWR-LRA, 2015 WL 6394779, at *3 (S.D. Miss. Oct. 22, 2015) (declining to accept litigant's unsupported assertion that an opposing party's "failure to respond to the allegations in the complaint constitutes an admission of the allegations in the complaint").

[4] The Court reiterates that, while the Parties proffered Plaintiff's Complaint as well as the letters from Defendant to Plaintiff and the letter from Plaintiff to Defendant before, the Court has before it for the first time here the Bentson Affidavit and the Strong Affidavit.  The Court also considers herein Defendant's Notice of Pleading and Statement [Dkt. 19].

demonstrate (and as the Court has indicated in several prior orders), Plaintiff may not rely on an unverified complaint to show the truth of the facts alleged therein.  The Court repeats that an unverified complaint does not constitute evidence on which the Court may rely in determining whether or not to grant or deny summary judgment.  *See, e.g.*, *Gauck*, 346 F.2d at 436; *Allergan*, 211 F. Supp. 3d at 914.  And the Court may not take judicial notice of the facts asserted therein as the truth of the matter asserted, particularly where such facts conflict or are disputed by the opposing party.  *See, e.g.*, *SB Int'l, Inc.*, 2007 WL 1411042, at *1; *Mabile*, 2016 WL 5231839, at *17.

## ANALYSIS

### I.   *FDCPA Claims*

Plaintiff claims (and seeks judgment as a matter of law) that Defendant violated FDCPA sections 1692d, 1692e(2)(A), 1692e(10), 1692f, 1692f(2), 1692g, and 1692g(b) [Dkt. 40 at 3-4]. The FDCPA governs actions by "debt collectors" against "consumers" and is intended "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors."  *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351-52 (5th Cir. 2002) (citation omitted).  The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt[,]" a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment[,]" and "debt collector" as (with certain exceptions inapplicable here) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(3), (5), (6) (2012).

Here, neither Party disputes Defendant's status as a debt collector, Plaintiff's status as either a "person" or a "consumer," or the status of the debt as debt the collection of which is subject to the FDCPA [*see, e.g.*, Dkt. 40, Ex. B at 3-6 (averring the debt in question relates to allegedly delinquent payments due a law firm for divorce services), Ex. A (showing Defendant sent interstate letters seeking to collect on this debt)].  *See Guajardo*, 2009 WL 3715603, at *3 (noting that, once plaintiff meets these threshold elements, plaintiff must prove some violation of the FDCPA occurred).

### A.   *Section 1692d*

FDCPA section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  *Id.* § 1692d.  Courts in this circuit apply the objective "least sophisticated consumer" standard in determining whether a debt collector has harassed, oppressed, or abused a consumer so as to violate Section 1692d.  *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 722 (S.D. Tex. 2012) (citing *Taylor v. Perrin, Landry, deLaunay*, 569 F.3d 1232, 1236 (5th Cir. 1997)).  In other words, the "consumer need not prove intentional conduct by the debt collector" in order to prevail on a Section 1692d claim, but rather must show the debt collector acted in a manner that the least sophisticated consumer would perceive as harassing, oppressive, or abusive.  *Id.*  The operative inquiry is whether the "natural consequence of [the debt collector's communication] is to abuse the hearer or reader."  15 U.S.C. § 1692d(2).  A debt collector's "implied threat of violence[,]" use of "religious slurs, profanity, obscenity, [or] calling the consumer a liar or a deadbeat" along with one's use of "racial or sexual epithets" may suffice to establish a violation

of Section 1692.  Statements of General Policy or Interpretation Staff Commentary on the Fair

Debt Collection Practices Act, 53 Fed. Reg. 50097-02, 50105 (Dec. 13, 1988).  On the other hand,

courts have found debt collectors' rude language generally will not violate Section 1692d.  *See,*

*e.g.*, *Guajardo*, 2009 WL 3715603, at *1 (finding no violation where debt collector called

consumer a liar and "demanded 'payment in full within 24 hours or else'" and highlighting that

the consumer "[did] not allege that [the debt collector] ever used obscene or profane language,

threatened violence, or misrepresented its true purpose in any communication"); *Bassett v. I.C.*

*Sys., Inc.*, 715 F. Supp. 2d 803, 809 (N.D. Ill. 2010) (finding no violation where debt collector

called consumer "a liar, laughed at him, and accused him of trying to make excuses to get out of

paying his debt" and collecting cases to same effect).

In the present case, the record evidence provides insufficient support for judgment as a

matter of law on Defendant's liability under Section 1692d.  Plaintiff alleges Defendant has

"repeatedly contacted Plaintiff . . . in writing and via telephone, attempting to collect the Debt

made subject of [her] claim" and that Plaintiff also has exchanged emails with the creditor who

has purportedly employed Defendant to collect the debt [Dkt. 1 at 2, 4].  Plaintiff asserts that,

through this behavior, Defendant violated Section 1692d [Dkt. 1 at 10].  The record evidence,

which consists in relevant part of the letters from Defendant, the March 26, 2015 letter from

Plaintiff to Defendant, and the Bentson Affidavit does not suffice to establish such violation.

Though the Bentson Affidavit shows Plaintiff subjectively felt "horrified" and "scared and

intimidated" by Defendant's letters "and the overall event of receiving" them [Dkt. 40, Ex. B at 3-

10], courts applying the objective "least sophisticated consumer" standard have found similar

language does not violate the FDCPA.  *See, e.g.*, *Guajardo*, 2009 WL 3715603, at *1; *Bassett*, 715

F. Supp. 2d at 809; *see also Lee*, 846 F. Supp. 2d at 722 (objective standard).  Further, nothing in

the record beyond the bare Complaint supports Plaintiff's allegations regarding any email communications from Defendant, and the Bentson Affidavit mentions only one phone call "in early to mid-2012" from Defendant [*compare* Dkt. 1, *with* Dkt. 40, Ex. B].  Defendant's letters to Plaintiff currently before the Court, though certainly rude, do not threaten violence or rise to the level of harassment, oppression, or abuse [*see* Dkt 40, Ex. A at 3 ("I trust the information enclosed will refresh your memory. After all, the amount still owed is substantial."), 4 ("Your continuing refusal to exhibit responsible conduct in addressing your defaulted agreement . . . gives me little option in the future handling of your account.")].  *See, e.g.*, *Guajardo*, 2009 WL 3715603, at *1; *Bassett*, 715 F. Supp. 2d at 809; *see also Lee*, 846 F. Supp. 2d at 727 n.7 (Section 1692d means to capture "other derogatory remarks which are similar in their offensiveness to obscene or profane remarks.") (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (5th Cir. 1985)). Accordingly, the Court concludes the record evidence does not establish Defendant's liability under Section 1692d.  *Cf. Jeter*, 760 F.2d at 1179 (finding the question "whether conduct harasses, oppresses, or abuses" generally, but not always, should be reserved for the jury).  The Court recommends Plaintiff's Motion for Summary Judgment be denied as to Plaintiff's Section 1692d claims.

### B.      *Sections 1692e and 1692f*

FDCPA section 1692e proscribes a debt collector's "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Specifically, Section 1692e(2)(A) prohibits the "false representation of . . . the character, amount, or legal status of any debt" and Section 1692e(10) disallows "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  *Id.*; *see also Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507,

511 (5th Cir. 2016) (noting 1692e provides "a nonexclusive list of prohibited practices"); 53 Fed. Reg. 50097-2, 50105-07 (same).  FDCPA section 1692f prohibits "use [of] unfair or unconscionable means to collect or attempt to collect any debt" through, for example, "acceptance . . . of a check or other payment instrument postdated by more than five days" lacking notification "in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit."  15 U.S.C. § 1692f, f(2).

Under Section 1692e(2)(A), "[a] debt collector may not claim an amount more than actually owed, or falsely assert that the debt has matured or that it is immediately due and payable, when it is not" or "convey[] to the consumer a false sense of urgency" in collecting payment, *inter alia*.  53 Fed. Reg. 50097-2, 50106.  Section 1692e(10) captures this and many other similar types of conduct, though "merely re-alleg[ing] a violation of another section of the FDCPA . . . [will] not suffic[e] to constitute a violation of § 1692e(10) . . . ."  *Lee*, 846 F. Supp. 2d at 724; *see also Barlow v. Safety Nat'l Cas. Corp.*, No. 3:11-CV-00236-BAJ, 2014 WL 1327922, at *5 (M.D. La. Mar. 31, 2014), *aff'd*, 586 F. App'x 191 (5th Cir. 2014) (dismissing Section 1692e(10) claims where they merely echoed the claims made under Section 1692(e)(2)(A)).  Importantly, though a debt collector's conduct need not be "intentional" in order to violate Section 1692e—"even an unintentional misrepresentation of an amount of debt[,]" for example, "can violate § 1692e(2)(A)[,]" *Lee*, 846 F. Supp. 2d at 722-23, a debt collector's violation of Section 1692f generally must be knowing, *see Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996).  And the same "unsophisticated or least sophisticated consumer" standard applies in "evaluating whether a collection letter violates § 1692e or § 1692f[.] . . ."  *Daugherty*, 836 F.3d at 511 (noting, however, that "the unsophisticated consumer is not one 'tied to the "very last rung on the [intelligence or] sophistication ladder"'").

Here, the record supports a finding Defendant violated Section 1692e, but does not support a finding Defendant violated Section 1692f.[5]   The record shows Defendant violates Section 1692e(2)(A), which proscribes the false representation of "the character, amount, or legal status of any debt[,]" because each of Defendant's letters references two different amounts— $10,940.58 as "Balance on Invoice #3144 – 07/13" and $15,050.50 as "Balance on Statement"— and does not identify whether Defendant claims $10,940.58 or $15,050.50 (or both) as the amount due.  Plaintiff avers that she did not know which of the amounts was allegedly owed, and that Defendants letters made clear he was trying to collect such amounts.  *Cf., e.g.*, *Womble v. Barton*, No. 4:15 CV 734 JMB, 2015 WL 7889628, at *3 (E.D. Mo. Dec. 4, 2015) (finding that the debt collector's reference to two different amounts owed in representations to the debtor constituted a violation of Section 1692e(2)(A)).  Furthermore, Defendant's reference to both amounts without any additional explanation "[is] confusingly misleading" such that Defendant's failure to explain in the letters which amount he intended to collect also independently violates Section 1692e(10).  *See, e.g.*, *Pickard v. Lerch*, No. 1:03CV1688-LJM-WTL, 2005 WL 1259629, at *5 (S.D. Ind. May 26, 2005) (finding violation of Section 1692e and noting "even if the . . . letter was not literally false in its statement of the amount of the debt, the . . . letter was confusingly misleading").[6]

By contrast, no record evidence demonstrates Defendant knowingly used unfair or unconscionable practices aimed at deceiving an unsophisticated consumer into paying the alleged

---

[5] The Court found in a prior Report and Recommendation [Dkt. 33], considering the letters from Defendant to Plaintiff and the letter from Plaintiff to Defendant (the evidence properly before the Court at the time), that Plaintiff had not sufficiently established her claims under Section 1692e as a matter of law.  The Court now has before it additional evidence, namely the Bentson Affidavit and Strong Affidavit, *see supra* **Summary of Evidence**, and in considering this evidence reaches a different conclusion.

[6] Even were the Court to consider other evidence in the record, namely Defendant's Notice of Pleading and Statement [Dkt. 19], the Court would continue to find Plaintiff establishes her Section 1692e claims, as it remains unclear which of the amounts Defendant seeks to collect and which he claims constitutes the debt Plaintiff owes [*see, e.g.*, Dkt. 40, Ex. B at 7].

debt.  As a result, Plaintiff does not establish a violation of Section 1692f.  *Ducrest*, 931 F. Supp. at 462 (finding that 1692f requires a knowing and/or intentional violation).  With regard to Plaintiff's Section 1692f(2) claim, specifically, the record currently before the Court nowhere indicates Defendant accepted any check from Plaintiff, much less a post-dated one.  15 U.S.C. § 1692f(2) (prohibiting "[t]he acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit").  The Court accordingly recommends Plaintiff's Motion be granted as to Plaintiff's claims under Section 1692e and denied as to Plaintiff's claims under 1692f.

### C.      Section 1692g

FDCPA section 1692g(a) requires a debt collector to disclose certain information to the targeted consumer at or within five days of initial contact with the consumer, namely

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).  In this initial notice the "debt collector may condense and combine the required disclosures, as long as he provides all required information."  53 Fed. Reg. 50097-2, 50108.  But "[m]erely including the required notice in letters to consumers is not sufficient.  The notice must also 'be set forth in a form and within a context that does not distort or obfuscate its

meaning.'" *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) (quoting *Peter*, 310 F.3d at 348).  In other words, the language must not "overshadow" or be "inconsistent with" the mandated notice.  *Id.*  Courts determine whether a letter complies with the notice requirement through the eyes of the "'unsophisticated or least sophisticated consumer standard.'"  *Id.* at 669 (quoting *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)).  The policy underlying the notice requirement—providing the consumer a clear picture of what the consumer owes and/or an opportunity to contest the debt—is further effected through Section 1692g(b), which "requires that, if the consumer disputes the debt or requests identification of the original creditor in writing, the collector must cease collection efforts until he verifies the debt and mails a response."  53 Fed. Reg. 50097-02, 50109; *see also* 15 U.S.C. § 1692g(b).  The consumer must dispute the debt and/or request the name and address of the original debtor, as the case may be, within thirty days and in writing.  15 U.S.C. § 1692g(b).  If the consumer contests the debt, the debt collector must provide "verification" of the debt before continuing to collect.  *Mack v. Progressive Fin. Servs., Inc.*, No. 4:13cv544, 2015 WL 123742, at *3-4 (E.D. Tex. Jan. 8, 2015) (Mazzant, J.) (noting neither the FDCPA nor the Fifth Circuit has specifically defined "the requirements of verification under the FDCPA" and relying on the Sixth Circuit's standard in *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785 (6th Cir. 2014)); *see also Ghanta v. Immediate Credit Recovery, Inc.*, No. 3:16-CV-00573-O, 2017 WL 1423597, at *8 (N.D. Tex. Apr. 18, 2017) (citing *Mack* and relying on the same standard).  The Court previously has described the standard for verification as follows:

> These cases suggest that the "baseline" for verification is to enable the consumer to "sufficiently dispute the payment obligation." Although the answer to that question depends on the facts of a particular situation, the cases reflect that an itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing that objective. Intuitively, such a practice makes good sense. In fact, it would likely lead to faster resolutions of disputes with those

consumers who act in good faith, because it will either show a valid debt that a consumer acting in good faith will actually pay, uncover an error in the record of the debt leading to the cancellation of the debt, or reveal the underlying dispute between the parties that can then be resolved. Finally, such an approach is consonant with the congressional purpose of the verification provision.
. . .
The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation. This information does not have to be extensive. It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date.

*Mack*, 2015 WL 123742, at \*4 (quoting *Haddad*, 758 F.3d at 785-86).

In the present case, Plaintiff avers she first received communication from Defendant regarding the alleged debt "[o]n or about March 13, 2015" in the form of a demand letter dated March 13, 2015 [Dkt. 40, Ex. B. at 3]. Plaintiff responded to the March 13, 2015 letter on March 26, 2015, requesting verification of the debt and disputing its validity [Dkt. 40, Ex. B at 6, Ex. B-1]. Defendant responded to Plaintiff's March 26 letter with a letter dated April 9, 2015, enclosing a demand letter from Defendant to Plaintiff dated January 29, 2015, and Plaintiff's "original retainer agreement with Aitken for [her] divorce" [Dkt. 40, Ex. B at 7]. Critically, Plaintiff avers she never received the January 29, 2015 letter prior to receiving it with the April 9, 2015 letter [Dkt. 40, Ex. B at 7]. No evidence on the record contradicts this averment or demonstrates Defendant actually sent the January 29, 2015 letter to Plaintiff prior to April 9, 2015. Consequently, the Court finds Plaintiff timely disputed the alleged debt, *see* 15 U.S.C. § 1692g(b), and that Defendant's March 13, 2015 letter constitutes Defendant's initial communication with Plaintiff regarding the alleged debt. Further, Defendant's initial communication omits the required

validation and dispute notices.  *See* 15 U.S.C. § 1692g(a)(4)-(5).[7]  Accordingly, the Court finds Defendant violated Section 1692g(a).[8]

By contrast, Plaintiff does not demonstrate Defendant violated Section 1692g(b) by failing to provide a sufficient verification of the debt before continuing in his attempts to collect.  The Bentson Affidavit states Defendant's April 9, 2015 letter, which Defendant apparently sent in response to Plaintiff's March 26, 2015 letter requesting verification of the debt, "did not provide the address of the original creditor as [Plaintiff] requested but did provide . . . [Plaintiff's] original retainer agreement with Aitken for [her] divorce" [Dkt. 40, Ex. B at 7].  The Bentson Affidavit also indicates "[Defendant] did send the Aitken divorce contract and some invoices, but he also enclosed the April 9, 2015 demand letter, rather than respond to the validation letter with whatever documentation he had" [Dkt. 40, Ex. B at 13].  These conclusory, self-serving statements will not suffice to carry Plaintiff's burden on this claim.  *See, e.g.*, *In re Deepwater* Horizon, 857 F.3d 246, 250 & n.7 (5th Cir. 2017) (rejecting party's reliance on a conclusory affidavit at summary judgment stage).  Further, Plaintiff's own averments indicate the letters Defendant sent to Plaintiff provided Plaintiff sufficient information regarding "how and when the debt was originally incurred" and "sufficient notice from which [Plaintiff] could sufficiently dispute the payment obligation."  *See Mack*, 2015 WL 123742, at *4; Dkt. 40, Ex. B (stating Plaintiff reached out to

---

[7] The Court need not determine whether the validation/dispute notice within Defendant's January 29, 2015 letter meets Section 1692g(a)'s requirements, as the uncontested record evidence demonstrates Plaintiff first received Defendant's March 13, 2015 letter, and no evidence establishes Defendant sent the January 29, 2015 letter as alleged.  *Cf. Johnson v. Attorney Office of Newman, Mathis, Brady & Spedale*, No. CIV.A. 12-706-RLB, 2013 WL 6834381, at *6 (M.D. La. Dec. 23, 2013) (finding an *allegation* that a debtor did not receive a purported initial notice will not rebut a debt collector's *evidence* that the debt collector sent the initial notice).  Even were the Court to consider Defendant's Notice of Pleading and Statement [Dkt. 19], the Court's conclusion would remain the same, as Defendant fails to provide any verification in that document that he sent the January 29, 2015 letter as he alleges.

[8] The Court notes it found in a prior Report and Recommendation [Dkt. 33], considering the letters from Defendant to Plaintiff and the letter from Plaintiff to Defendant (the evidence properly before the Court at the time), that Plaintiff had not sufficiently established her claims under Section 1692g(a) as a matter of law.  The Court now has before it additional evidence, namely the Bentson Affidavit and Strong Affidavit, *see supra* **Summary of Evidence**, and in considering this evidence reaches a different conclusion.  *See also supra* note 5.

Aiken to verify the debt).  Plaintiff does not show Defendant failed to provide sufficient verification before continuing to attempt to collect the alleged debt.  The Court accordingly recommends Plaintiff's Motion be granted as to Plaintiff's Section 1692g(a) claims and denied as to Plaintiff's Section 1692g(b) claim.

## II.    *TDCA Claims*

Plaintiff claims (and seeks judgment as a matter of law) that Defendant violated TDCA sections 392.101, 392.301(a)(1), 392.301(a)(8), 392.303(a)(2), 392.304(a)(1)(A), 392.304(a)(4), 392.304(a)(6), 392.304(a)(8), 392.304(a)(12)-(14), 392.304(a)(17), and 392.304(a)(19) [Dkt. 40 at 4-6].  Plaintiff also asserts Defendant violated Texas Business and Commerce Code section 17.62—the Texas Deceptive Trade Practices Act ("DTPA")—vis-à-vis TDCA section 392.404(a) [Dkt. 32 at 7].  The TDCA defines a "consumer" as "an individual who has a consumer debt[,]" a "consumer debt" as "an obligation, or alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction[,]" and "debt collector" as "a person who directly or indirectly engages in debt collection[,]" which the TDCA defines as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  TEX. FIN. CODE § 392.001(1)-(2), (5)-(6); *see also id.* § 392.001(7) (defining "third-party debt collector" as a "debt collector, as defined by 15 U.S.C. § 1692a(6)," with certain exceptions inapplicable here).  Here, as under the FDCPA, neither Party disputes Defendant's status as a debt collector and/or third-party debt collector, Plaintiff's status as a "consumer," or the status of the debt as debt the collection of which is subject to the TDCA [*see, e.g.*, Dkt. 40, Ex. B at 3-6 (averring the debt in question relates to allegedly delinquent payments due a law firm for divorce services)].

### A.      Section 392.101: Bond Requirement

TDCA section 392.101 requires third-party debt collectors to obtain "a surety bond issued by a surety company authorized to do business in this state as prescribed by [the TDCPA]." TEX. FIN. CODE § 392.101(a).   Additionally, "[a] copy of the bond must be filed with the [Texas] secretary of state."  *Id.*  Failure to comply with these requirements constitutes a violation of the TDCA.  *See CA Partners v. Spears*, 274 S.W.3d 51, 79 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (upholding injunction prohibiting debt collection activities in Texas where trial court found defendant was a third-party debt collector and had failed to post a security bond in compliance with Section 392.101).   Here Plaintiff has alleged and shown that Defendant failed to comply with the Section 392.101 bond requirement [*see* Dkt. 40, Ex. C at 7 (averring Plaintiff's attorney "checked the records of the Secretary of State of Texas when this suit was filed and it showed no surety bond on file for any name or name combination [Defendant] uses on his letters"). Accordingly, the Court recommends Plaintiff's Motion be granted as to her TDCA section 392.101 claim.[9]

### B.      Section 392.301

TDCA section 392.301(a)(1) proscribes use of "threats, coercion, or attempts to coerce that employ [either] of the following practices:" [a] using or threatening to use violence or other criminal means to cause harm to a person or property of a person; . . . or [b] threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a).  Here Plaintiff alleges but fails to show Defendant used or threatened violence or other criminal means in the manner proscribed.  As

---

[9] The Court notes it found in a prior Report and Recommendation [Dkt. 33], considering the letters from Defendant to Plaintiff and the letter from Plaintiff to Defendant (the evidence properly before the Court at the time), that Plaintiff had not sufficiently established her claims under Section 392.101 as a matter of law.  The Court now has before it additional evidence, namely the Bentson Affidavit and Strong Affidavit, *see supra* **Summary of Evidence**, and in considering this evidence reaches a different conclusion.  *See also supra* notes 5, 8.

discussed *supra* at **Section I.A**, Plaintiff's similar claims under the FDCPA fail on the present record to demonstrate summary judgment is appropriate; for the same reasons, Plaintiff's claims under Section 392.301 fail at this stage.   *Cf. Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 667 (N.D. Tex. 2010) (noting comparable provisions of FDCPA and TDCPA and finding allegations of "the same conduct" would violate both without further analysis).   Accordingly, the Court recommends Plaintiff's Motion be denied as to her TDCA section 392.301 claim.

> *C.        Section 392.303*

TDCA section 392.303 provides in relevant part that "a debt collector may not use unfair or unconscionable means that employ [*inter alia*] . . . [the] collect[ion] or attempt[] to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.] . . ."   *Id.* § 392.303(a)(2); *see also McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 479 (5th Cir. 2015) (finding violation of TDCPA section 392.303(a)(2) where bank-defendant assessed fees in violation of the contract between the bank and the borrower-plaintiff).

In the present case, Plaintiff alleges Defendant has attempted to collect fees in violation of Section 392.303, but does not indicate which part of the alleged debt Defendant seeks to collect from Plaintiff constitutes such impermissible fees [*see* Dkt. 1 at 12].   Plaintiff avers Defendant provided her a copy of the purported contract between Plaintiff and the creditor law firm and as well as "some invoices" [*e.g.*, Dkt. 40, Ex. B at 12-13].   Plaintiff also references an email conversation she had in March 2015 with Aitken about whether Aitken continued to claim Plaintiff owed on any account with Aitken incident to his work on her divorce proceedings [Dkt. 40, Ex. B at 5].   Plaintiff fails to provide the Court with copies of the referenced invoices, contract, or emails,

though she baldly avers they support her claims—such conclusory averments do not suffice to show Defendant attempts here to collect an unauthorized fee or other cost, particularly where Plaintiff could have proffered documentary support for her claims.  *In re Deepwater Horizon*, 857 F.3d at 250 & n.7.  The Court finds Plaintiff provides no evidence to support this claim and, in any case, fails to identify any interest, charge, or fee Defendant seeks to collect that violates the underlying contract between Plaintiff and Aitken.  Accordingly, the Court recommends denying Plaintiff's Motion as to her claims under TDCA section 392.303.

### D.     Section 392.304

TDCA section 392.304 proscribes "fraudulent, deceptive, or misleading representation that employs the following practices:"

> (1) using a name other than the:
> (A) true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection; . . .
> . . .
> (4) failing to disclose clearly in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money;
> . . .
> (6) using a written communication that fails to indicate clearly the name of the debt collector and the debt collector's street address or post office box and telephone number if the written notice refers to a delinquent consumer debt;
> . . .
> (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;
> . . .
> (12) representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges;
> (13) representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion;
> (14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business;
> . . .
> (17) representing that a consumer debt is being collected by an attorney if it is not;

(19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

Tex. Fin. Code § 392.304(a); *see also Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (identifying Section 392.304(a)(19) as a "catchall provision").  Importantly, a violation for misrepresentation under the TDCA requires an "*affirmative statement* that was false or misleading[,]" and which "relate[s] to the character of the debt[.] . . ."  *Thompson*, 783 F.3d at 1026 (internal quotations omitted).  In this vein, a representation (a) that the consumer owes a lump sum of money that (b) fails to further delineate which parts of that sum constitute interest, fees, or otherwise, without more, merely creates a fact issue as to the debt collector's liability.  *See Gonzalez v. Temple-Inland Mortg. Corp.*, 28 S.W.3d 622, 625-26 (Tex. App.—San Antonio 2000, no pet.).

Here Plaintiff fails to demonstrate summary judgment is appropriate as to her Section 392.304(a)(1)(A), (4), (6), (12), (13), (14), or (17) claims, as the record contains no evidence that Defendant violated any of provisions (4), (6), (12), (13), (14), or (17).  Defendant notes in each letter his purpose of collecting the alleged debt on behalf of Aitken, Aitken & Sharpe, P.C., never mentions or implies any fees will accrue except as provided by the underlying contract, and never holds himself out as an attorney attempting to collect the debt [*see* Dkt. 40, Ex. A].  Furthermore, though Defendant refers to himself variously as "David E. Chyma, Consultant" and "D.E. Chyma, Consultant," nothing in the record indicates this is not "the true business or professional name or the true personal or legal name of [Defendant]."  *See* Tex. Fin. Code § 392.304(a)(1)(A).  And Defendant's letters make clear his role—he demands payment for a debt Plaintiff allegedly owes to Aitken [*see* Dkt. 40, Ex. A].

By contrast, the record supports Plaintiff's claims under Sections 392.304(a)(8) and (19).[10] As the Court found with regard to Plaintiff's FDCPA Section 1692e claims *supra* in **Section I.B**, each of Defendant's letters references two different amounts—$10,940.58 as "Balance on Invoice #3144 – 07/13" and $15,050.50 as "Balance on Statement"—but does not identify whether Defendant claims $10,940.58 or $15,050.50 (or both) as the amount due.  As with Plaintiff's FDCPA claim, this evidence suffices to show Defendant violated subsections (a)(8) and (19).  *See, e.g.*, *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013) (indicating that a Section 392.304(a)(8) occurs where the debt collector leads the debtor "to think differently with respect to the character, extent, amount, or status of the[] debt"); *cf. Cox*, 726 F. Supp. 2d at 667 (applying the same analysis to plaintiff's claims made under FDCPA Section 1692e and TDCA Section 392.304(a)(8) and (19)).  Accordingly, the Court recommends Plaintiff's Motion be granted as to her TDCA Section 392.304(a)(8) and (19) claims and denied as to her TDCA Section 392.304(a)(1)(A), (4), (6), (12), (13), (14), and (17) claims.

### III.    *Damages, Costs, and Fees*

Plaintiff claims damages under both the FDCPA (Section 1692k) and TDCA (Section 392.403), as well as injunctive relief under the TDCA and "[r]emedies under [the DTPA] pursuant to [TDCA Section 392.404]" [Dkt. 1 at 11 (FDCPA), 14 (TDCA & DTPA)].

Under Section 1692k, a court may award "any actual damage sustained by [a debtor]" resulting from a debt collector's failure to comply "with any provision" of the FDCPA, "additional damages . . . not exceeding $1,000[,]" and "the costs of the action, together with any reasonable

---

[10] The Court notes it found in a prior Report and Recommendation [Dkt. 33], considering the letters from Defendant to Plaintiff and the letter from Plaintiff to Defendant (the evidence properly before the Court at the time), that Plaintiff had not sufficiently established her claims under Section 392.304 as a matter of law.  The Court now has before it additional evidence, namely the Bentson Affidavit and Strong Affidavit, *see supra* **Summary of Evidence**, and in considering this evidence reaches a different conclusion.  *See also supra* notes 5, 8, & 9.

attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(1), (2)(A), (3); *see also Brown v. Dallas Creditors Servs., Inc.*, No. 4:12CV371, 2013 WL 3377438, at *3 (E.D. Tex. July 3, 2013) (rendering award under Section 1692k and noting the statute caps additional damages at $1,000 per action, "not per violation").  A court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional" in determining the amount of a non-complying debt collector's liability.  15 U.S.C. § 1692k(b)(1).  Even "[a] single violation is sufficient to establish [such] liability."  *United States v. Commercial Recovery Sys., Inc.*, 179 F. Supp. 3d 728, 733-34 (E.D. Tex. 2016).

Similarly, under Section 392.304, a court may award "injunctive relief to prevent or restrain a violation of [the TDCA]; and . . . actual damages sustained as a result of a violation of [the TDCA]."  TEX. FIN. CODE § 392.403(a).  Further, "[a] person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs."  *Id.* § 392.403(b).  Where the debtor "successfully maintains an action under [TDCA Section 392.101,]" the debtor also may claim statutory damages of "not less than $100 for each violation of [the TDCA]."  *Id.* § 392.403(e); *see also Marauder Corp. v. Beall*, 301 S.W.3d 817, 822-23 (Tex. App.—Dallas 2009, no pet.) (finding a debtor must prevail on its claim for actual damages in order to receive additional statutory damages).  Importantly, a debtor must prevail on its claim for injunction "[i]n order to be awarded attorney's fees . . . ."  *Citibank (S.D.), N.A. v. Durden*, No. 05-11-00154-CV, 2012 WL 6096569, at *2 (Tex. App.—Dallas Dec. 7, 2012, no pet.) (citing *Marauder Corp.*, 301 S.W.3d at 823).

Further, under the FDCPA and TDCA, actual damages include "not only out-of-pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish, and

emotional distress." *Reyelts v. Cross*, 968 F. Supp. 2d 835, 846 (N.D. Tex. 2013) (collecting cases). To collect such damages, a plaintiff must proffer direct evidence regarding the "nature, duration, and severity of the mental anguish" and show it has caused a substantial disruption in the plaintiff's daily routine. *Id.* This requires "actual evidence of distress and injury, not merely conclusory statements about it." *Harrington v. Nat'l Enter. Sys., Inc.*, No. 4:08cv422, 2010 WL 890176, at *4 (E.D. Tex. Mar. 9, 2010).

Here, Plaintiff has carried her summary judgment burden as to her FDCPA Section 1692e and 1692g(a) claims, as well as her TDCA Section 392.101 and 392.304(a)(8), (19) claims and has shown herself entitled to claim actual damages, statutory damages, and attorneys fees under both the FDCPA and TDCA. The matter of damages, however, "is not appropriately decided in a motion for summary judgment and would need to be addressed at a hearing." *Infante v. Samara Portfolio Mgmt., L.L.C.*, No. 1:14-CV-00324, 2017 WL 1102757, at *7 (E.D. Tex. Jan. 20, 2017).[11]

## CONCLUSION AND RECOMMENDATION

In light of the foregoing, the Court recommends Plaintiff's Motion for Summary Judgment [Dkt. 40] be **GRANTED IN PART AND DENIED IN PART**. The Court recommends Plaintiff be granted judgment as a matter of law as to her claims under FDCPA Sections 1962e and 1692g(a) and under TDCA Sections 392.101 and 392.304(a)(8), (19). Further, the Court recommends

---

[11] As to Plaintiff's claims for attorneys fees, the Court notes the claim is premature at this time, as the case is not complete. That said, the Fifth Circuit and U.S. Supreme Court have held a court must determine what constitutes a "reasonable" amount of attorneys fees using the two-step process outlined in Knoerr v. Pinnacle Asset Grp., L.L.C., No. H–16–599, 2017 WL 2118975, at *1 (S.D. Tex. May 16, 2017) (citing, inter alia, Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir.1974)). In calculating the lodestar fee, courts will consider the attorney's own averments regarding the attorney's usual rates and the attorney's experience and reputation. See, e.g., Prater v. Commerce Equities Mgmt. Co., No. CIV.A. H-07-2349, 2008 WL 5140045, at *4 (S.D. Tex. Dec. 8, 2008), Brown, 2013 WL 3377438. However, "the applicant should include contemporaneously created time records that specify[] . . . the date, the hours expended, and the nature of the work done" so that the court may evaluate whether the hours expended are not "excessive, redundant, or otherwise unnecessary . . . ." *Prater*, 2008 WL 5140045 (citing, inter alia, Saizan v. Delta Concrete Prods. Co., Inc., 448 F.3d 795, 800 (5th Cir. 2006); *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002); Riley v. City of Jackson, 99 F.3d 757, 760 (5th Cir. 1996)); *see also Knoerr*, 2017 WL 2118975, at *2 (considering the proffered attorney time-log). Without billing records, the Court cannot adequately evaluate Plaintiff's request for attorneys fees.

denying Plaintiff's claims under FDCPA Sections 1692d, 1692f, and 1692(g)(b), as well as Plaintiff's claims under TDCA Sections 392.301, 392.303, and 392.304(a)(1)(A), (a)(4), (a)(6), (a)(12), (a)(13), (a)(14), and (a)(17).

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 7th day of July, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE