IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AIMEE MARIE BENTSON, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:15-CV-00523-ALM-CAN |
| v. | § § § | |
| DAVID E. CHYMA, | § § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

On August 10, 2017, the Court granted Plaintiff Aimee Marie Bentson's Motion for Summary Judgment in part, granting judgment as a matter of law on Plaintiff's claims under the Fair Debt Collection Practices Act, 15 U.S.C §§ 1692e and 1692g(a) and the Texas Debt Collections Act, Texas Finance Code §§ 392.101 and 392.304(a)(8), (19) [Dkt. 50]. Thereafter, Plaintiff dismissed all claims for which summary judgment was not granted [Dkt. 58], waived her request for a jury, and requested a final evidentiary hearing on the issue of damages be set [Dkt. 58]. The undersigned conducted a hearing on October 25, 2017 [Dkt. 66]. Having considered the relevant pleadings, oral argument of counsel, witness testimony, and record evidence, the Court recommends damages be awarded to Plaintiff as set forth herein.

**BACKGROUND**

On July 31, 2015, Plaintiff filed the present suit, alleging Defendant David E. Chyma violated the Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Practices Act ("TDCA") in his attempts to collect a debt incurred as a result of Plaintiff's divorce proceeding [Dkt. 1]. Plaintiff asserts Defendant sent her confusing letters in violation of the

FDCPA and TDCA and that Defendant consistently contacted her in a harassing, threatening, and demeaning manner [Dkt. 1].

Plaintiff testified that she was first contacted by Defendant when he left a voicemail on her cellphone, wherein Defendant notified Plaintiff that she owed her divorce lawyer, Paul Aitken [Dkt. 67 at 8-9]. Prior to this phone call, Plaintiff was unaware that she potentially owed Aitken any money [Dkt. 67 at 10]. Two days following this phone call, Plaintiff attempted to resolve any confusion or misunderstanding by sending Aitken an email inquiring as to any pending debt, which was never answered [Dkt. 67 at 11-12]. Shortly after receiving the voicemail, Plaintiff received a letter from Defendant with several amounts listed for the debt and mention of previous correspondence that Plaintiff did not receive [Dkt. 67 at 21-22]. Days after, Plaintiff sent another letter disputing her receipt of the first letter and the validity of the debt [Dkt. 67 at 23]. Defendant answered with a copy of a letter dated months before their first interaction and noted "I anticipate a timely reply as charges clearly stated in the signed agreement continue to mount" [Dkt. 67 at 23-24; Ex. 5]. Several weeks later, Plaintiff received another letter from Defendant demanding the full amount of the debt and cautioning Plaintiff to "[g]uide [her]self accordingly" [Dkt. 67 at 31; Ex. 6]. This letter prompted Plaintiff to obtain counsel and file this lawsuit [Dkt. 67 at 31-32].

On May 5, 2017, Plaintiff filed a Motion for Summary Judgment, seeking judgment as a matter of law on her claims under the FDCPA (§§ 1692d, 1692e, 1692f, and 1692g) and the TDCA (§§ 392.101, 392.301, 392.303, 392.304(a)(1)(A), (a)(4), (6), (8), (13)-(14), (17), and (19)), as well as attorney fees, damages, and injunctive relief [Dkt. 40]. On July 7, 2017, the Magistrate Judge entered a report and recommendation [Dkt. 45] recommending that: Plaintiff be granted judgment as a matter of law on her claims under FDCPA Sections 1692e and 1692g(a) and under TDCA Sections 392.101 and 392.304(a)(8), (19); and Plaintiff be denied judgment as a matter of law on

her claims under FDCPA Sections 1692d, 1692f, and 1692(g)(b) and under TDCA Sections 392.301, 392.303, and 392.304(a)(1)(A), (a)(4), (a)(6), (a)(12), (a)(13), (a)(14), and (a)(17) [Dkt. 45]. The Magistrate Judge also found "Plaintiff has carried her summary judgment burden as to her FDCPA §§ 1692e and 1692g(a) claims, as well as her TDCA §§ 392.101 and 392.304(a)(8), (19) claims and has shown herself entitled to claim actual damages, statutory damages, and attorneys fees under both the FDCPA and TDCA" [Dkt. 45 at 26]. The District Judge adopted the Report and Recommendation in full [Dkt. 50]. On September 22, 2017, Plaintiff filed a Notice of Partial Dismissal of Claims Not Granted in Summary Judgment, voluntarily "dismissing all claims *that were not granted* in the Memorandum Opinion" [Dkt. 58 at 2] (emphasis in original).

On October 25, 2017, the undersigned held a hearing on damages, attorney fees and expenses related to the claims for which liability was established; namely Plaintiff's claims under FDCPA §§ 1692e and 1692g(a) and under TDCA §§ 392.101 and 392.304(a)(8), (19) [Dkt. 66]. At hearing, Plaintiff appeared with counsel; Defendant did not appear (notwithstanding his acknowledged receipt of the order setting the evidentiary hearing on the issues of damages, attorney's fees, and expenses) [Dkts. 63, 64]. At hearing, Plaintiff proffered seventeen exhibits, including her correspondence with Defendant, screenshots of Defendant's Facebook page, Plaintiff's unanswered discovery requests, and Plaintiff's counsel's billing records and time slips.

Plaintiff advised that she sought no less than $25,000 in actual damages as a result of the mental anguish Plaintiff suffered, "$100 for each of the violations under the [TDCA] of which there were three," "$1,000 for each of the violations under the [FDCPA] of which there were two," "$34,087.50 in time, $695 in court costs and $134.54 in expenses associated with [Plaintiff's counsel's] firm for the case," and also an award of exemplary damages [Dkt. 67 at 38].

## ANALYSIS

*Actual Damages*

Under the FDCPA and TDCA, actual damages include "not only out-of-pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish, and emotional distress." *Reyelts v. Cross*, 968 F. Supp. 2d 835, 846 (N.D. Tex. 2013) (collecting cases); *see also Hashaway v. Int'l Asset Grp., LLC*, No. 4:11-CV-376, 2012 WL 2036458, at *2 (E.D. Tex. Mar. 16, 2012) (Mazzant, J.), *report and recommendation adopted,* No. 4:11-CV-376, 2012 WL 2036451 (E.D. Tex. June 6, 2012). It is well established that "[a] plaintiff may recover actual damages for mental anguish under both the FDCPA ... and the TDCA." *McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10-CV-424, 2010 WL 5834802, at *6 (E.D. Tex. Dec. 14, 2010) (Mazzant, J.), *report and recommendation adopted*, No. 4:10-CV-424, 2011 WL 675386 (E.D. Tex. Feb. 16, 2011) (quoting *Bulluck v. Abbott and Ross Credit Serv., L.L. C.,* No. A–09–CV–413, 2009 WL 4598330 *3 (W.D. Tex. Dec. 3, 2009). To collect such damages, a plaintiff must proffer direct evidence regarding the "nature, duration, and severity of the mental anguish" and show it has caused a significant disruption in the plaintiff's daily routine. *Id*.; *see also Knoerr v. Pinnacle Asset Grp., L.L.C.*, No. CV H-16-599, 2017 WL 1177970, at *3 (S.D. Tex. Mar. 30, 2017). This requires "actual evidence of distress and injury, not merely conclusory statements about it." *Harrington v. Nat'l Enter. Sys., Inc.*, No. 4:08-cv-422, 2010 WL 890176, at *4 (E.D. Tex. Mar. 9, 2010). To that end, "courts must 'closely scrutinize' awards of mental anguish damages." *Bullock v. Abbott & Ross Credit Servs., L.L.C.*, 2009 WL 4598330, at *3. The Court has wide discretion to quantify the mental anguish Defendant's conduct has caused Plaintiff.

In the instant case, Plaintiff seeks $25,000 in actual damages for her mental anguish [Dkt. 67 at 36]. Plaintiff testified at the hearing that she was humiliated that she was being pursued for the substantial debts Defendant cited in his demand letter [Dkt. 67 at 22, 29]. Plaintiff testified that her feeling when she first received this letter was "stressful, very stressful, surprised, shocked" [Dkt. 67 at 22]. Plaintiff testified that with each of Defendant's letts, she continued to feel concerned, confused, and "extremely" upset [Dkt. 67 at 25-26]. Plaintiff's concerns about her financial security were also amplified; Plaintiff is a single mother of two young children, with minor job experience, geographically distant from other family members, and had experienced distressing issues with debt in her previous marriage [Dkt. 67 at 27]. Specifically, Plaintiff testified that the effect this "debt threat" had on her was "very heavy … very stressful" [Dkt. 67 at 27]. Plaintiff testified, "[s]omething of that magnitude when you're a single mom with two little kids and making very little money, trying to put two ends together, it was…hugely very stressful, upsetting" [Dkt. 67 at 27]. Plaintiff further testified that she had panic attacks, lost sleep and her appetite, experienced symptoms of chest tightening, headaches, "burning of the stomach," and had a "huge rash outbreak" because of the communications she received from Defendant [Dkt. 67 at 28-30]. Plaintiff's dermatologist confirmed that Plaintiff's rash was caused by stress [Dkt. 67 at 28]. Plaintiff worried that this "debt threat" would result in a freeze of her bank accounts and seizure her vehicle or other assets, which would mean that she would no longer be able to care for her children [Dkt. 67 at 28-29]. Plaintiff also researched Defendant and found his Facebook profile, wherein she discovered that several people who frequented Defendant's Facebook profile and had visited his place of business featured images Plaintiff described as disturbing on their personal Facebook profiles, which Plaintiff found "terrifying, very

disconcerting" [Dkt. 67 at 35-37; Ex. 8]. Plaintiff testified that even to this day, she suffers from anxiety and stress related to Defendant's actions [Dkt. 67 at 36].

Plaintiff has met her burden for establishing that she is entitled to an award of actual damages. Having observed Plaintiff, and in light of the hearing testimony and evidence presented, the Court is satisfied that Plaintiff has experienced mental anguish and genuinely suffered emotionally due to Defendant's debt collection efforts. However, although the Court finds that Plaintiff has experienced emotional distress as a result from Defendant's confusing and threatening correspondence, her request for $25,000 in mental anguish damages is unreasonable in light of the circumstances present in this case. Again, noneconomic damages like these cannot be determined with mathematical precision; by their nature, they can be determined only by the exercise of sound judgment. In exercising its sound judgment, the Court has thoroughly evaluated a host of debt collection cases with similar fact patterns and the awards in such cases. *See CA Partners v. Spears*, 274 S.W.3d 51, 76–77 (Tex. App.—Houston [14th Dist.] 2008, pet. overruled) ("Texas courts, including this Court, have held that evidence of a claimant's physical and emotional state, coupled with his/her inability to eat and sleep, constitutes legally and factually sufficient evidence to support the award of mental anguish damages."); *see also Reyelts v. Cross*, 968 F. Supp. 2d 835, 846–47 (N.D. Tex. 2013), *aff'd,* 566 F. App'x 316 (5th Cir. 2014) (the court $25,000 in mental anguish damages where plaintiff was forced out of retirement and began taking anti-anxiety medication daily, experienced worry, anger, embarrassment, marital strife, and a disruption of her sleeping habits); *Norwest Mortgage, Inc. v. Salinas,* 999 S.W.2d 846, 862–63 (Tex.App.—Corpus Christi 1999, pet. denied) (concluding evidence that plaintiff was unable to sleep, suffered severe stomach cramps, was often unable to eat, and felt "desperate" supported finding that plaintiff suffered "'a high degree of mental pain and distress' that caused a serious disruption in [her] daily

routine" and was legally and factually sufficient to support award of mental anguish damages); *EMC Mortgage Corp., v. Jones,* 252 S.W.3d 857, 871 (Tex.App.—Dallas 2008, no pet.) (awarding $5,000 where plaintiff became so depressed from debt collector's action that he had to take medication); *Household Credit Services, Inc. v. Driscol,* 989 S.W.2d 72, 92 (Tex.App.—El Paso 1998, pet. denied) (upholding $150,000 award against a debt collection agency where defendant harassed plaintiff for over a year with vulgar calls several times a day, made death threats against the plaintiff, and caused plaintiff to suffer physical ailments and severe depression). Consider in *Bullock v. Abbott & Ross Credit Servs., L.L.C.*, the court awarded $2,000 in mental anguish damages to a single mother, who, after her employer was contacted by a debt collector, worried that she would be arrested for failing to pay off her debt and unable to care for her child, and continued to worry after hiring counsel to represent her in the matter. No. A-09-CV-413 LY, 2009 WL 4598330, at *3–4 (W.D. Tex. Dec. 3, 2009). The Court finds that Plaintiff's case is similar. Here, Plaintiff, a single mother with very limited financial resources, worried (and continues to worry) that she would be unable to provide for her children if her assets were frozen pending resolution of Defendant's debt collection efforts; this anxiety and stress manifested itself physically whereby Plaintiff experienced panic attacks, headaches, loss of appetite and sleep, and a rash that caused her to visit a dermatologist. Following review, and a thorough evaluation of the evidence herein, the Court has weighed those amounts that would fairly and reasonably compensate Plaintiff, and has determined that an award of $2,000 in mental anguish damages is warranted.

*Statutory Damages Under the Fair Debt Collection Practices Act*

Under FDCPA § 1692k, a court may award "any actual damage sustained by [a debtor]" resulting from a debt collector's failure to comply "with any provision" of the FDCPA, "additional damages . . . not exceeding $1,000[,]" and "the costs of the action, together with any reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(1), (2)(A), (3). Plaintiff asks for an award of statutory damages in the amount of $2,000 for the two separate violations of the FDCPA [Dkt. 67 at 38]. However, Plaintiff is only entitled to $1,000 because under the FDCPA, statutory damages are capped at $1,000 total per action, not per violation. *Brown v. Dallas Creditors Servs., Inc.*, No. 4:12CV371, 2013 WL 3377438, at *3 (E.D. Tex. July 3, 2013) (rendering award under § 1692k and noting the statute caps additional damages at $1,000 per action, "not per violation") (Mazzant, J.); *see also Whatley v. Creditwatch Servs., Ltd.*, No. 4:11-CV-493, 2014 WL 1287131, at *3 (E.D. Tex. Mar. 31, 2014); *Hashaway*, 2012 WL 2036458, at *2. Accordingly, the undersigned recommends that the Court find that Plaintiff is entitled to $1,000 total in statutory damages under the FDCPA.

*Statutory Damages Under the Texas Debt Collection Act*

Under TDCA § 392.304, a court may award "injunctive relief to prevent or restrain a violation of [the TDCA]; and . . . actual damages sustained as a result of a violation of [the TDCA]." TEX. FIN. CODE § 392.403(a). Further, "[a] person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation of this chapter." TEX. FIN. CODE § 392.403(e). "The statutory damages of subsection (e) come into play where the jury finds a violation of one of the three applicable sections but finds that the plaintiff suffered no damages or damages in an amount less than $100 as a result of the violation." *Marauder Corp. v. Beall*, 301 S.W.3d 817 (Tex. App.—

Dallas 2009, pet. overruled) ("If the jury had found that Beall suffered $100 or any amount over $100 as a result of Marauder's failure to post a bond, Beall would not be entitled to the statutory damages."); *see also Brown v. Enter. Recovery Sys., Inc.*, No. 02-11-00436-CV, 2013 WL 4506582, at *14 (Tex. App.—Fort Worth Aug. 22, 2013, pet. denied)("if a plaintiff establishes a right to only injunctive relief or if the plaintiff proves up actual damages that are less than $100, the plaintiff may recover at least $100" in statutory damages). Because the undersigned recommends finding that Plaintiff is entitled to $2,000 in actual damages, the Court should not also award her statutory damages under the TDCA.

### *Attorney Fees*

Lastly, at hearing, Plaintiff also requested additional relief in the form of attorney fees. Plaintiff moves for attorney fees and costs pursuant to FDCPA § 1692k(a)(3) and TDCA § 392.403(b) [Dkt. 1 at 10-14]. "Under the FDCPA, a plaintiff in a successful action to enforce FDCPA liability can recover 'the costs of the action, together with a reasonable attorney's fee as determined by the court." *Whatley*, 2014 WL 1287131, at *1–2 (internal quotation marks omitted). "[U]nder the Texas Debt Collection Act, a party may only be awarded attorney's fees if he successfully maintains an action for 'actual damages sustained as a result of a violation' of the Act." *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 30–31 (Tex. App.—Tyler, 2000, pet. overruled) (quoting TEX. FIN. CODE § 392.403(a)(2)); *see also Farkas v. Wells Fargo Bank, N.A.*, No. 03-14-00716-CV, 2016 WL 7187476, at *10 (Tex. App.—Austin, Dec. 8, 2016, no pet.); TEX. FIN. CODE § 392.403 (b) ("A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs."). Because Plaintiff has successfully maintained an action under both the TDCA and the FDCPA, she is entitled to reasonable attorney fees.

In determining the amount of a reasonable attorney fee, the court employs a two-step process. "First, the court determines the lodestar, which is the reasonable number of hours expended on a case multiplied by the reasonable hourly rates for the litigating attorneys. It is a plaintiff's burden to show the reasonableness of the hours billed and to prove he exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Whatley*, 2014 WL 1287131, at *1–2. Once the Court calculates the "lodestar" fee, the lodestar may be adjusted upward or downward depending on the twelve (12) factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors are: (1) the time and labor required for the case; (2) the novelty and difficulty of the issues involved; (3) the skill required to litigate the case; (4) the ability of the attorney to accept other work; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances of the case; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19; *see also Shipes v. Trinity Indus.*, 987 F.2d 311, 319-20 (5th Cir.), *cert. denied*, 510 U.S. 991 (1993).

Plaintiff seeks $34, 087.50 in attorney fees [Dkt. 67 at 38]. Plaintiff is represented by Steve Strong of the Strong Law Firm, P.C. Mr. Strong testified at the hearing that he has been licensed in the state of Texas for the past thirty years, and is board certified in civil trial law [Dkt. 67 at 38]. Throughout his years of experience, Mr. Strong has specialized in the area of consumer debt, and was "sole outside counsel for Neiman Marcus here in Texas, collecting their large balance and some small balance debts on their charge cards" [Dkt. 67 at 39]. Mr. Strong also worked for "one of the largest collection law firms in the country[,] again, representing creditors on credit card

debt" [Dkt. 67 at 40]. Mr. Strong avers that as a result of his experience, he is "very well versed" in the FDCPA and the TDCA [Dkt. 67 at 41]. Mr. Strong charged $325 for each hour of work he performed in this case, and testified that it "is a reasonable and customary hourly rate for the work that was done and for the level of experience [he] ha[s]," and was reasonable and customary with other fees charged in the Eastern District of Texas [Dkt. 67 at 41]. Mr. Strong submitted his billing invoices to establish the number of hours expended in this matter [Dkt. 67, Ex. 15]. The invoices demonstrate that Mr. Strong met with Plaintiff, attempted contact (in various forms) with Defendant, researched legal issues related to Plaintiff's case, drafted various court documents, discovery requests, and other communications with the Parties, and appeared in various court hearings on behalf of Plaintiff. Overall, Mr. Strong expended 93.50 hours.[1] Defendant has not contested any of the hours expended by Mr. Strong. "Where counsel requests compensation at his normal billing rate and that rate is shown to be within the range of market rates for attorneys of similar skill and experience, the burden is on the opposing party to show that a lower rate should be used." *United States v. Cornerstone Wealth Corp., Inc.*, No. 3–98–CV–0601–D, 2006 WL 1524592 at *2 (N.D. Tex. Jun. 2, 2006), *citing Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989); *see also Watkins*, 7 F.3d at 459 (court must articulate reasons for rejecting normal billing rate); *KeyCorp v. Holland*, No. 3:16-CV-1948-D, 2017 WL 606617, at *7 (N.D. Tex. Feb. 15, 2017) ("Further, if a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing. It is a common practice for courts to address only those

---

[1] Mr. Strong avers that he expended 111.50 hours total on this case. However, the billing records demonstrate that he and another attorney, Janet L. Strong, worked on this case with Mr. Strong for a combined total of 111.50 hours. By the Court's independent review, Mr. Strong expended 93.50 hours in this case. Because only evidence to determine the reasonableness of Mr. Strong's fees are before this Court, the Court only considers the 93.50 hours expended in the billing records.

potentially inadequate entries brought to the court's attention."). Moreover, the Court has independently reviewed the billing invoices and has found no duplicative, excessive, or otherwise improper hours billed therein. Further, the Court finds that the rate charged by Mr. Strong is reasonable and consistent with the prevailing rates in the Eastern District of Texas for an attorney with Mr. Strong's skill and experience.[2] The undersigned concludes that the appropriate lodestar here to be calculated as 93.50 hours for Mr. Strong at $325.00 an hour, for a total of $30,387.50.[3]

Upon review of the evidence and after giving due consideration to the relevant *Johnson* factors, Steven Strong's testimony and affidavit, and The Strong Law Firm's invoices, the undersigned recommends the Court find that a total of $30,387.50 is a reasonable and appropriate attorney fee in this case.

***Court Costs***

Plaintiff seeks $695 in court costs and $134.54 in litigation expenses [Dkt. 67 at 38]. "Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) printing costs and witness fees; (4) fees for copies of papers

---

[2] State Bar of Texas, Dep't of Research & Analysis, 2015 Hourly Fact Sheet, http://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends (the latest report shows that a reasonable and customary hourly rate for an attorney in the Dallas–Fort Worth–Arlington Region with greater than 25 years of experience is $350 per hour); *see also Vanliner Ins. Co. v. DerMargosian*, No. 3:12–cv–5074–D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (the Court is an expert regarding reasonableness of attorney fees).

[3] After considering the relevant *Johnson* factors, the undersigned does not find that the lodestar amount should be changed in this case. Mr. Strong testified as to Defendant's multiple failures to cooperate with the litigation, including failing to attend a scheduled deposition, respond to discovery requests, and communicate with opposing counsel. Mr. Strong further testified that there were unique issues in suing a law firm (namely, with the attorney-client privilege), and that Defendant by being both a *pro se* litigant and refusing to cooperate with the litigation was difficult to work with. Mr. Strong also testified that as a solo practitioner, he must be selective in what cases he takes on, and "that required that [he] did have to limit [his] work in other cases" [Dkt. 67 at 47-49]. Furthermore, the record demonstrates that Plaintiff recovered on some of the grounds she raised under the FDCPA and the TDCA, and is entitled to an amount of actual damages and statutory damages; in view of that, her success in this litigation is not nominal and the amount of time and resources expended on this case is reasonable. However, while Plaintiff was successful on some of her FDCPA and TDCA claims, she did not receive "exceptional results in this case." *See Whatley*, 2014 WL 1287131, at *7. Accordingly, after a thorough analysis of *Johnson* factors and the record in this case, the record does not support changing the lodestar amount in this case.

necessarily obtained for use in the case; (5) certain docket fees; and (6) compensation of court appointed experts and interpreters." *NSEW Holdings LLC*, 2017 WL 1030313, at *7–8 (E.D. Tex. Mar. 17, 2017) (Mazzant, J.) (citing 28 U.S.C. § 1920). Plaintiff's counsel, Steven Strong's billing invoices show that Plaintiff's costs and expenses include $400.00 in filing fees to the Clerk, a $95.00 service fee for three summons on defendants, a $41.18 fee for an Iowa process server, $2.09 in postage, a $24.46 fee to serve discovery on Defendant, $66.81 in trial supply costs, and $200.00 in court reporter costs for a deposition [Dkt. 67 at Exs. 15-17]. Plaintiff is entitled to $600 total in court costs for the $400 filing fee, and the $200 court reporter fee. Plaintiff may not recover the fees incurred on private process servers. *See Vanderbilt Mortg. & Fin., Inc. v. Flores*, No. CIV.A. C-09-312, 2011 WL 2160928, at *21–22 (S.D. Tex. May 27, 2011). Plaintiff also cannot recover her $2.09 postage fees or $24.46 fee incurred to serve Defendant discovery requests. *See NSEW Holdings LLC*, 2017 WL 1030313, at *7–8; *see also Auto Wax Co. v. Mark v. Prods., Inc.*, No. 3:99-CV-982-M, 2002 WL 265091, at *5 (N.D. Tex. Feb. 22, 2002) (Lynn, J.) (postage and delivery fees are not recoverable under § 1920). Plaintiff is similarly not entitled to $66.81 in trial supply costs. *See* 28 U.S.C. § 1920. Plaintiff is also not entitled to any of the above-rejected costs under the TDCA. "When state law provides the rule of decision, federal law provides the procedure for recovery of nontaxable costs, but state law determined whether they are recoverable." *Vanderbilt*, 2011 WL 2160928, at *20–21. "Thus, [Plaintiff's] 'non-taxable expenses' are recoverable under [her] TDCA claim along with attorney's fees, so long as they are recoverable under Texas state law." *Id.* (citing Fed. R. Civ. Proc. 54(d)(2)). A prevailing party under the TDCA may recover "costs" along with "attorney's fees reasonably related to the work performed." TEX. FIN. CODE § 392.403(b). "However … under Texas law, the following have been held to be not recoverable as costs of court: delivery services, such as Federal Express; travel;

REPORT AND RECOMMENDATION − Page 13

long distance calls; bond premiums; postage; reproduction expense; binding of brief; transcripts of testimony elicited during trial; office air-conditioning ... and secretarial overtime." *Id.* (citing *Shenandoah Assocs. v. J & K Properties, Inc.*, 741 S.W.2d 470, 486 (Tex. App.—Dallas 1987, writ denied). Accordingly, Plaintiff is not entitled to recover the requested "non-taxable expenses" pursuant to her TDCA claim. The undersigned recommends finding that Plaintiff is entitled to $600 in taxable court costs for the $400 filing fee, and the $200 court reporter fee.

*Exemplary Damages*

Exemplary damages are not available under the FDCPA. *Desmond v. Phillips & Cohen Assocs., Ltd.*, 724 F. Supp. 2d 562, 569 (W.D. Pa. 2010) (citing 15 U.S.C. § 1692k); *Whiteman v. Burton Neil & Assocs. P.C.,* No. 07–2289, 2008 WL 4372842, at *3 (M.D.Pa. Sept. 19, 2008) ("The damages section of the FDCPA does not provide for punitive damages."); *Young v. LVNV Funding LLC*, No. 4:12CV01180 AGF, 2013 WL 4551722, at *2 (E.D. Mo. Aug. 28, 2013); *Keeton v. Countrywide Home Loans, Inc.*, 217 F. Supp. 3d 177, 181 (D.D.C. 2016). However, "exemplary damages are available under the Texas Act." *Vanderbilt*, 2011 WL 2160928, at *15, n. 11 (S.D. Tex. May 27, 2011) (collecting cases); *Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1011 (5th Cir. 1998) (citing *Brown v. Oaklawn Bank,* 718 S.W.2d 678, 680 (Tex. 1986); *Waterfield Mortgage Co. v. Rodriguez,* 929 S.W.2d 641, 645–47 (Tex.App.—San Antonio 1996, no writ) (holding that under the Texas Act evidence necessary to support a finding of exemplary damages under common law will suffice)). In deciding whether to awarding exemplary damages in a TDCA case, courts consider:

a. the nature of the wrong,
b. the character of the conduct involved,
c. the degree of culpability of the wrongdoer,
d. the situation and sensibilities of the parties concerned,
e. the extent to which such conduct offends a public sense of justice and propriety,
f. the net worth of the wrongdoer, and

REPORT AND RECOMMENDATION − Page 14

      g. compensation for inconvenience and attorney's fees.

*Waterfield Mortg. Co.*, 929 S.W.2d at 645.

The Court does not find that exemplary damages are appropriate in this case. A case's record must be egregious for exemplary damages to be appropriate. TEX. FIN. CODE § 392.404(b); *Morante*, 157 F.3d at 1011; *Waterfield Mortg. Co.*, 929 S.W.2d 641, 647 (court found exemplary damages were appropriate where debt collector took plaintiffs' "home away from them when they are making good faith attempts to pay ever-escalating demands"); *Marlow v. Medlin*, 558 S.W.2d 933, 938 (Tex. Civ. App.—Waco, 1977, no pet.) (court found exemplary damages appropriate where "defendants were abusive and insulting toward plaintiff, accused her of stealing, and threatened her with arrest"). Plaintiff was not continually contacted, harassed, or threatened by Defendant at all hours. Neither were her home or possessions taken away because of Defendant's collection activity. The record in this case is not so egregious that exemplary damages should be awarded under the TDCA. Accordingly, the undersigned recommends that Plaintiff should take nothing in exemplary damages.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends that:

1. Defendant be held liable to Plaintiff for the sum of $2,000 incurred in actual damages as a result of Defendant's improper debt collection actions.

2. Defendant be held liable to Plaintiff for the sum of $1,000 incurred in statutory damages under the FDCPA as a result of Defendant's improper debt collection actions.

3. Plaintiff's request for statutory damages under the TDCA be denied.

4. Plaintiff's request for attorney fees be granted in the amount of $30,387.50.

REPORT AND RECOMMENDATION − Page 15

5. Plaintiff's request for court costs be granted in the amount of $600.00.

6. Plaintiff's request for exemplary damages be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 11th day of December, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE